IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                No. 1:14-cr-3762-WJ

PATRICK DURAN,

    Defendant.

## MEMORANDUM OPINION AND ORDER ON THE UNITED STATES' MOTION *IN LIMINE* FOR *DAUBERT* RULING REGARDING THE ADMISSIBILITY AND SCOPE OF DEFENDANT'S PROPOSED EXPERT TESTIMONY

**THIS MATTER** is before the Court on the United States' Opposed Motion *In Limine* for *Daubert* Ruling regarding the Admissibility and Scope of Defendant's Proposed Expert Testimony [Doc. 92], filed November 15, 2017. When it comes to expert testimony, the Court is the gatekeeper. The Court must assess the expert's qualifications and the reliability of the expert's opinion before allowing the expert's testimony. The United States, by its motion, requests the Court exercise its gatekeeping function as to Defendant's expert and exclude him from testifying.

Defendant is charged with abuse of a child. Doc. 59. The United States alleges Defendant caused an eight-month old child to suffer non-impact abusive head trauma. Doc. 92 at 3. Defendant gave notice that he intends to call Dr. Joseph Scheller, a pediatric neurologist, as an expert witness "to testify regarding causation of injury and related matters." Doc. 119 at 1. After receiving Dr. Scheller's expert report for this case, the United States filed the subject motion. The Court held three hearings on the motion, in which the Court received exhibits and heard testimony from Dr. Scheller, Dr. Blaine Hart, and Dr. Leslie Strickler. Docs. 125, 147, and 172.

# LAW

Federal Rule of Evidence 702 provides that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In accordance with Rule 702, the Court must first decide whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. Then the Court must determine whether the expert's opinion is reliable by assessing the expert's underlying reasoning and methodology. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019). The party offering the expert bears the burden of showing that the expert's testimony satisfies Rule 702's reliability requirements. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

The Supreme Court outlined five non-exclusive factors for courts to consider when assessing whether an expert's testimony satisfies Rule 702's reliability requirements: whether the theory or technique has (1) been or can be tested, (2) been peer-reviewed, (3) a known or potential error rate, (4) standards controlling the technique's operation, and (5) been generally accepted by the scientific community. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993).

When assessing reliability, the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. That said, neither Rule 702 nor *Daubert* "requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit*[1] of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1218 (10th Cir. 2016)

---

[1] *Ipse dixit* is defined as "something asserted but not proved." Black's Law Dictionary (11th ed. 2019).

2

(quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

## DISCUSSION

The United States does not dispute that Dr. Scheller is qualified to render an opinion in pediatric neurology. Doc. 180 at 2 ("[Dr. Scheller's] qualifications are sufficient to continue on and examine the other *Daubert* factors."). The issue for the Court to decide, therefore, is whether Defendant has shown that Dr. Scheller's testimony satisfies Rule 702's reliability requirements.

Defendant argues Dr. Scheller's testimony satisfies Rule 702's reliability requirements because he relied on the same data and methodology as the United States' experts. Doc. 177 at 6-8. That is not accurate. Unlike the United States' experts, Dr. Scheller did not consider Defendant's statement that "he lost his temper and picked up the child 'too rough'" when coming to the opinion that there "is no evidence that [the child] was a victim of abusive head trauma." Doc. 92 at 3; Doc. 92-1 at 3. The following exchange during Dr. Scheller's cross-examination at the November 19, 2018 hearing illustrates this:

> Q. So, Dr. Scheller, it appears that when you testify in the past in other state court cases that you disregard what a defendant said happened to the child before it had the medical episode that brought them into the hospital; is that true?
>
> A. I wouldn't use the term disregard. I'll say I regard more the medical reports.
>
> Q. Okay. So if [Defendant] admitted to law enforcement that he shook the baby or jerked the baby, that's not something you would consider when you look at the medical reports and come up with the opinion that this is definitely not abusive head trauma, which is what you say in your report; correct?
>
> A. Well, I don't think I used the word "definitely," but let me make sure. I'm looking at Part 3 of the binder, and I wrote -- I said: "There is no evidence that [the child] was a victim of abusive head trauma." And so I did not consider that evidence.
>
> Q. You didn't consider the Defendant's statements to law enforcement; correct?
>
> A. As evidence that he was a victim of abusive head trauma.

Doc. 127 at 81. Also, unlike the United States' experts, Dr. Scheller referenced no scientific research in his expert report, whereas the United States' experts referenced 26 scientific research articles. *Compare* Doc. 92-1 (Dr. Scheller's Expert Report), *with* United States Exhibit 22 (Dr. Carole Jenny's Expert Report). The Court finds that Dr. Scheller did not rely on the same data and methodology as the United States' experts.

Defendant also argues Dr. Scheller's testimony satisfies Rule 702's reliability requirements because it is based on sound methods and principles. Doc. 177 at 8-10. Defendant explains that Dr. Scheller's testimony is based on his extensive experience, knowledge, and training as a pediatric neurologist; his review of the child's medical history, physical report, lab reports, and radiology imaging; and is informed by peer-reviewed publications. Defendant, however, disregards the fact that Dr. Scheller's testimony is not generally accepted by the scientific community and is not supported by the established scientific research on abusive head trauma.

Dr. Scheller has made clear in this Court and others that his testimony is not generally accepted by the scientific community. Doc. 127 at 62-65 (Dr. Scheller's testimony at the November 19, 2018 motion hearing about his opinions on abusive head trauma being in the five percent of doctors); *see V. C. v. Texas Dep't of Family & Protective Servs.*, 2018 WL 3078099, at *6 (Tex. App. June 22, 2018) ("Dr. Scheller acknowledged that his rejection of rapid acceleration-deceleration as causation for such injuries is a view that is shared by only five percent of the relevant medical professionals and that puts him at odds with the views of organizations such as the American Academy of Pediatrics, the World Health Organization, the American Academy of Opthalmology, the American Association for Pediatric Ophthalmology, the American College of Radiology, the American Academy of Family Physicians, the American College of Surgeons, the American Association of Neurological Surgeons, the Pediatric Orthopedic Society of North

America, the American College of Emergency Physicians, and the American Academy of Neurology."). The Court could exclude Dr. Scheller's testimony on this factor alone.

Dr. Scheller, however, has also provided testimony in this Court that is not supported by the established scientific research on abusive head trauma. For example, at the August 26, 2019 motion hearing, Dr. Scheller explained that it is possible that the child's injury resulted from trauma at birth. Doc. 175 at 75. Dr. Scheller's explanation, however, does not withstand scrutiny. It has been refuted by the established scientific research on abusive head trauma, to include a consensus statement authored by 15 medical experts that is endorsed by the Society for Pediatric Radiology, European Society of Paediatric Radiology, American Society of Pediatric Neuroradiology, American Academy of Pediatrics, European Society of Neuroradiology, American Professional Society on the Abuse of Children, Swedish Paediatric Society, Norwegian Pediatric Association, and Japanese Pediatric Society. Arabinda Kumar Choudhary et al., *Consensus Statement on Abusive Head Trauma in Infants and Young Children*, 48 PEDIATRIC RADIOLOGY 1048, 1056-57 (2018) (explaining, contrary to Dr. Scheller's testimony, that "asymptomatic birth-related subdural hematomas . . . resolve in the overwhelming majority of infants within the first 4–6 postnatal weeks" and that "there is no merit to the unsubstantiated proposal that acute collapse, coma or death, occurring months after delivery, is caused by a parturitional [subdural hematoma] with secondary rebleeding"). The Court finds that Dr. Scheller's testimony is not based on sound methods and principles.

The "courtroom is not the place for scientific guesswork, even of the inspired sort. Law lags science; it does not lead it." *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1217 (10th Cir. 2002) (citation omitted). Although there is no dispute that Dr. Scheller is qualified to render an opinion in pediatric neurology, Defendant has failed to show that Dr. Scheller's testimony

satisfies Rule 702's reliability requirements and, therefore, he shall be excluded from testifying as an expert witness.

**IT IS THEREFORE ORDERED** that United States' Opposed Motion *In Limine* for *Daubert* Ruling regarding the Admissibility and Scope of Defendant's Proposed Expert Testimony [Doc. 92] is **GRANTED**.

*/s/ William P. Johnson*
**WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE**